BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 53 OF OKLAHOMA COUNTY, OKLAHOMA, a Public Body Corporate, Plaintiff,

v.

BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT NO. 52 OF OKLAHOMA COUNTY, OKLAHOMA, a Public Body Corporate, et al., Defendants.

No. CIV–71–728.

United States District Court, W. D. Oklahoma.

March 31, 1975.

Leslie L. Conner of Conner, Little & Conner, and James Little, Oklahoma City, Okl., for plaintiff.

Larry Derryberry, Atty. Gen. of Okl., and Larry French and Joe C. Lockhart, Asst. Attys. Gen., Oklahoma City, Okl., for Fisher and McDonald.

Curtis P. Harris, Dist. Atty., and William L. Funk, Asst. Dist. Atty., Oklahoma City, Okl., for Haller.

James F. Howell of Johns, Howell & Webber, Midwest City, Okl., for Bd. of Ed., Dist. 52.

Barney W. Miller of Miller, Granger & Hamilton, G. Douglas Hamilton, Oklahoma City, Okl., for Parker, Austin and others.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

This litigation arises from the deannexation of an area (the affected area) formerly a part of Plaintiff's Independent School District I–53 (Crooked Oak) and its annexation to Independent School District I–52 (Midwest City). The process was accomplished in accordance with the laws of the State of Oklahoma. The affected area was transferred from the Crooked Oak District to the Midwest City District on July 1, 1972 pursuant to order of the Oklahoma Supreme Court upon a finding that applicable State laws had been followed in the deannexation process. *Austin v. State Board of Education,* 497 P.2d 218 (Okl.1972).

The instant action is a civil rights case in which Plaintiff contends that it has an affirmative constitutional obligation to protect its integrated school district and the rights of the persons in its district. It contends that the deannexation election had the effect of violating constitutional rights by dismantling an integrated school district. Plaintiff seeks restoration of its school district boundaries to their location prior to the transfer in order to reacquire the affected area notwithstanding the deannexation.

Defendants Fisher, McDonald, and White were joined in the action based on their official capacities in administering school district boundary changes pursuant to State law. These parties have taken a generally neutral position in this litigation.

Defendant Board of Education of Independent School District I–52 (Midwest City) which district received the affected area urges that it did not encourage the deannexation effort and denies that it has taken any action intending to result in the dismantling of an integrated school district. It further states it has at all times since its inception in 1942 operated an integrated school system and that it presently operates an integrated system in full compliance with appropriate guidelines.

Defendants Parker and Austin were school patrons in the affected area who participated in circulating the initiative petition and acted as proponents at the time of the election. They assert their motives arose from a belief that their children would receive a better education in the Midwest City district. These Defendants deny that they worked with any governmental officials at any level to include state or local officials and state that they have been opposed at all levels in their efforts. Jurisdiction in this action was found to exist by the Court of Appeals for this Circuit in its unpublished opinion of November 13, 1972 pursuant to 28 U.S.C. § 1343(c). Said Court also entered an opinion in this case on August 30, 1973 holding that improper procedures had been followed in the granting of a Motion for Summary Judgment. Both

of said appeals followed rulings of another Judge of this Court. After the second remand of the case the assigned Judge transferred the case to the undersigned Judge. In the first of said Opinions, the Court of Appeals stated:

". . . The Supreme Court has held that the realignment of school districts may be enjoined when it would impede the process of dismantling a segregated school system. *Wright v. Council of City of Emporia,* 407 U.S. 451, 470 [92 S.Ct. 2196, 33 L.Ed.2d 51]. The same remedy is available when the effort is to dismantle an integrated system in alleged violation of Fourteenth Amendment rights."

The parties agreed to certain relevant facts which were incorporated in the Pre-Trial Order. The first agreed fact was that Crooked Oak was operated as an all white segregated system prior to 1954 when *Brown v. Board of Education of Topeka,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) was decided. The second agreed fact was that the annexation election was procedurally valid and the affected area was transferred to Midwest City on July 1, 1972. It was further agreed that the school patrons in the affected area had voted against deannexing from Crooked Oak and joining Midwest City in 1959 and again in 1969. The parties also agreed that the opening of a public housing project in the Crooked Oak district known as Hamilton Courts resulted in a substantial number of Black students moving into and attending schools in Crooked Oak and that prior to the opening of this project virtually no Blacks attended schools in Crooked Oak.

Crooked Oak at all times has operated only one senior highschool and one junior highschool. Prior to 1969, the district operated three elementary schools. West Oak was and is located in a well developed housing area located in the western portion of

the district to the west of an expressway which traverses the district. The West Oak attendance area encompassed this area. East Oak was located in the affected area which is a well developed housing area located along the west edge of Del City,[1] a suburb of Oklahoma City. The attendance zone of East Oak primarily included the affected area. The third elementary school was Central Oak located at the main campus along with the Junior and Senior High-schools. The original Crooked Oak district was approximately 2½ miles square containing approximately 6 square miles.[2] The central portion of the district does not contain any large residential developments and can be described as a sparsely populated area containing many industrial tracts and a public park over one square mile in size. The Central Oak attendance area generally encompassed this sparsely populated area.

The Hamilton Courts project was built in the eastern part of the sparsely populated area and west of the affected area. A fourth school was constructed in the Crooked Oak district adjacent to Hamilton Courts which school was called Southern Oaks. This school opened during the 1969–1970 school year and its attendance district was primarily the Hamilton Courts project area.

During the spring of 1971, at about the time Defendants Parker and Austin were circulating the initiative petitions which eventually culminated in the affected area being transferred to Midwest City, officials of Crooked Oak were notified by officials of the United States Department of Health, Education, and Welfare (HEW) that Crooked Oak was in probable non-compliance with Title VI of the Civil Rights Act. One basis for this notification was that the Southern Oak Elementary School was identifiable as a Black school[3] having a Black

---

1. Most of the town of Del City has always been located in the Midwest City School District with the primary exception being the affected area along its west boundary.

2. A quarter section of area had been carved out of the west edge of the district for an unknown reason.

3. The evidence at the time of the trial disclosed that Plaintiff has again allowed this school to become identifiable as a Black school due to it

enrollment exceeding 85% while the district as a whole had a Black enrollment of less than 14%. The evidence discloses that a desegregation plan was presented and approved and Crooked Oak operated in compliance with HEW civil rights guidelines during the 1971–1972 school year at which time they had 3407 students of which 611 were black and 198 represented other minorities. Crooked Oak was a fully integrated system during school year 1971–1972.

After the deannexation which became effective July 1, 1972, the total enrollment in the Crooked Oak District for the school year 1972–1973 dropped to 1691 of which 712 were black and 101 represented other minority groups. The figure submitted for the current school year 1974–1975 shows the total enrollment has dropped even further to 1330 students and that the number of Black students has also declined to 541 while other minorities included 79 students.

Crooked Oak had a Black enrollment of approximately 20% prior to the deannexation which increased to approximately 42% following same.[4] The percentage is a little over 40% for the current school year.

The evidence discloses that in the fall of 1972, the Midwest City District received 1361 students from the affected area and that 70 of these were Black.

■ The East Oak Elementary School is the only facility of the Crooked Oak District located in the affected area. Negotiations were entered into with the Midwest City District concerning a transfer of this facility to the receiving district but an agreement could not be reached. In this regard, evidence was presented that informal talks were conducted concerning a merger of the Crooked Oak District into the Midwest City District. Such talks are irrelevant and immaterial to the issues herein. At the time of trial, Crooked Oak was rent-ing the East Oak facility to a private group for special educational purposes.

■ Plaintiff in its Complaint set out contentions relating to a necessary decrease in the number of teachers and supporting personnel due to the transfer of the affected area. Such contentions were nor reurged in the Pre-Trial Order and have thus been abandoned.[5] However, a decrease in teachers and supporting personnel would inevitably result from any deannexation situation bringing about a reduction in school population and area and would be irrelevant and immaterial to the issues herein.

■ Plaintiff also in its Complaint contended that it would lose a large portion of its tax base by the transfer of the affected area to another school district. This contention also has been abandoned by Plaintiff's failure to reurge it in the Pre-Trial Order.[5] However, evidence was received which showed that the tax base in the Crooked Oak District per pupil during the current school year greatly exceeds that of the Midwest City District. In this regard, the industrial growth within the area probably has caused this situation. In addition, the evidence disclosed that Crooked Oak receives special funds from local, state, and Federal sources because of the large number of students living in public housing which is not on the property tax rolls. It thus does not appear that the transfer of the affected area has affected the money available to operate the Crooked Oak schools for the benefit of the students who remain in the district.

■ The Plaintiff presented evidence that the curriculum had been altered after the transfer of the affected area to eliminate certain courses which could be considered or described as college preparatory courses. Plaintiff attributes this elimination of courses as being caused by a lack of

having a virtually all Black enrollment. This raises a serious question as to whether Plaintiff appears in this equitable action with "clean hands". This situation is caused by Plaintiff failing to voluntarily comply with guidelines established according to the Civil Rights Act.

4. Part of this percentage increase is due to the increased number of Blacks enrolled.

5. Local Rule 16(c) provides that the contents of the Pre-Trial Order supersedes the pleadings.

demand for same by the students remaining in the district. Plaintiff admits that its curriculum had been tailored to include certain courses such as black history, and more remedial courses. It thus seems that Plaintiff has properly adapted its curriculum to serve best its students.

▮ Plaintiff presented evidence that the educational and socio-economic levels of the students in the remaining part of its district are lower than those in the affected area. This of course resulted in a drop in educational percentile ratings in the district. In this regard, Plaintiff has no constitutional guarantee that its students maintain a certain level. Plaintiff has failed to show that the loss of the students from the affected area has caused the students in the remaining area to have lower scores. The influx of students into the district living in public housing appear to have caused the level of the students in the district as a whole to decrease prior to the deannexation. The Plaintiff had no constitutional right to prevent the Black students moving into its district from attending its schools based on the fact that its educational level would thereby decrease. It has no more constitutional right to prevent the students in the affected area from attending the schools in their new district for the same reason.

The Court finds that Defendants Parker and Austin as school patrons at no time acted in concert with state officials, to include those made Defendants herein, who are charged with administering the laws relating to the changing of school district boundaries. It was necessary for them to obtain an order of the Oklahoma Supreme Court to require Defendant White's predecessor, W. C. Haller, to call the deannexation election after the petition was circulated. See *Haller v. Austin*, 487 P.2d 1360 (Okl.1971). It was likewise necessary for them to obtain a writ of mandamus to compel state officials charged with ministerial duties to implement the deannexation order following the election. *Austin v. State Board of Education, supra.* Likewise, the Court finds that no public official herein named as defendants or their predeces-

sors acted in any manner to encourage or facilitate the transfer of the affected area except as required by statute and/or Court orders. The Defendant Board of Education of Independent District I–52 did not actively participate in or encourage the individual school patrons of the affected area to make the transfer. The evidence discloses that Independent School District I–52 (Midwest City) has never operated a segregated school system since it was established in 1942. At the time of the trial, the percentage of Blacks in the district was slightly less than 5%.

Plaintiff asserts in its Complaint that it brings this action to enforce rights pursuant to 42 U.S.C. § 1983 et seq. and also pursuant to the 1964 Civil Rights Act (42 U.S.C. §§ 2000a et seq.). In the Pre-Trial Order it only asserts rights pursuant to 42 U.S.C. § 1983. In *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) the Court stated:

> "The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second element requires that the plaintiff show that the defendant acted 'under color of law.'"

The contention set out by the Plaintiff in the Pre-Trial Order states:

> "The acts of the defendants Allen M. Austin and James R. Parker in circulating a Petition and obtaining a vote thereon which de-annexed an area from I–53 is a violation of the constitutional rights under the Fourteenth Amendment and the statutory rights of the persons remaining in the district of I–53 and the Board of Education of Independent School District No. 53 has an affirmative constitutional obligation to protect the integrated school district and the rights of the persons in the District of I–53."

Their contentions fail to disclose an allegation of acts on the part of the individual Defendants which deprive any person of any right secured by the Constitution. They do assert that the State school officials have an affirmative duty to "eliminate segregation, prevent the dismantling of an integrated school system" and further that the Board of Education of Independent District I–52 (Midwest City) "is fostering a return to segregated school systems by law in refusing to permit the annexation of the remaining portion of I–53 to I–52 and must discharge its affirmative duties to end segregation and prohibit the dismantling of integrated school systems."

■ In looking to the rights secured by the Constitution and laws of the United States, it must be determined as stated by our Court of Appeals in its first opinion if the transfer of the affected area from the Plaintiff's district has impeded the process of dismantling a segregated school system pursuant to *Wright v. Council of City of Emporia*, 407 U.S. 451, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972) or dismantled an integrated system.

The facts in the instant case vary somewhat from those involved in *Wright v. Council of City of Emporia, supra*. In that case, a separate school system was created or carved out of a larger system. This act was accomplished two weeks after the United States District Court had ordered the implementation by the larger system of a plan designed to dismantle a system of enforced racial segregation. In the instant case, the Plaintiff district was operating in compliance with guidelines established by HEW prior to the transfer of the affected area and thus was not in the process of dismantling a system of enforced racial segregation. Crooked Oak at that time was a fully integrated school system.

Another factor present in *Wright v. Council of City of Emporia, supra*, was that the new district which was created took with it two of the three school buildings which had been used by the larger district and that these buildings were better equipped than the one remaining with the old district. In the instant case, no school buildings have been taken from Plaintiff, and the one in the affected area which it no longer uses for school purposes was primarily utilized by the students in the affected area.

Another factor discussed in the case of *Wright v. Council of City of Emporia, supra*, was a disparity in the racial composition of the two systems. However, the Supreme Court stated in regard to this point as follows at p. 464, 92 S.Ct. at p. 2204, 33 L.Ed.2d 62:

"We need not and do not hold that this disparity in the racial composition of the two systems would be a sufficient reason, standing alone, to enjoin the creation of a separate school district. The fact that a school board's desegregation plan leaves some disparity in racial balance among various schools in the system does not alone make that plan unacceptable. We observed in *Swann*,[6] *supra*, that '[t]he constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole.' 402 U.S., at 24, 91 S.Ct. at 1280, 28 L.Ed.2d at 571."

■ In the instant case, Crooked Oak experienced an increased ratio of Black students following the transfer of the affected district. However, the district as a whole was not racially identifiable as a Black school district either before or after the transfer.

■ During the school year preceding the transfer (1971–1972) the Plaintiff school district operated a fully integrated school system which was not racially identifiable as a Black system. Following the transfer on July 1, 1972 the Plaintiff school district for school year 1972–1973 operated an inte-

---

6. *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

grated school system which was not racially identifiable as a Black system.[7] The Court finds that Crooked Oak was not in the process of dismantling a segregated system when the transfer of the affected area was accomplished. The Court further finds that the transfer of the affected area did not "dismantle" an integrated system. The system was integrated before and after the transfer and is now fully capable of operating an integrated system.

As this Court understands the holding in *Wright v. Council of City of Emporia, supra*, wherein the Court stated:

". . . We hold only that a new school district may not be created where its effect would be to impede the process of dismantling a dual system."

the situation involved in said case was unique and the Court's holding was limited to the very narrow circumstances involved in said case. In the instant case, a new school district has not been created, and no process of dismantling a dual system has been impeded. The Plaintiff has not suffered constitutional deprivations as set out in *Wright v. Council of City of Emporia, supra*, or by any other means.

█ In considering Plaintiff's burden to establish that its rights have been violated by persons acting under "color of state law" the Court finds that in addition to Plaintiff failing to establish that its constitutional rights had been violated, that it likewise has failed to establish the second element required to prevail under 42 U.S.C. § 1983.

█ Defendants Parker and Austin at all times performed acts as individuals pursuant to procedures provided by the Statutes of the State of Oklahoma to effect the transfer of the affected area. They had a right to so proceed. As noted previously, they did not act in concert with any state official. The standard established in *Ad-*

*ickes v. Kress & Co., supra*, was stated to be:

"To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents," (citations omitted).

The actions of Defendants Parker and Austin in question herein were done pursuant to or in conformity with State law procedures. These acts are distinguishable from acting "under color of state law." *Logan v. Short*, 342 F.Supp. 1349 (E.D.Mo.1972); *Weise v. Reisner*, 318 F.Supp. 580 (E.D.Wis. 1970). They did not participate in joint activity with the State of Oklahoma or its agents in their deannexation efforts.

█ The Court finds that under the evidence Defendant Board of Education of Independent District I–52 (Midwest City) committed no acts in accomplishing the transfer of the affected area to its district and thus was not "acting under color of state law" in regard to the transfer. The Court further finds that under the law this Defendant had no "affirmative duty" or any duty to permit or agree to the annexation of the remaining portion of the Crooked Oak district following the transfer.

█ The acts of the remaining Defendants were ministerial in nature and were accomplished only pursuant to order of the Oklahoma Supreme Court. It follows that although these persons were state officials, they voluntarily committed no acts to further or effect the transfer of the affected area, which transfer Plaintiff asserts constituted a violation of its rights.

The Court having found that Plaintiff has not been deprived of any constitutional rights by the transfer of the affected area from its school district to the Midwest City

7. The Court finds that Plaintiff has not acted in good faith in recently discontinuing its voluntary compliance with guidelines set by HEW, and that such non-compliance is not caused by the deannexation and transfer of the affected area. Plaintiff's own witnesses testified that the Crooked Oak district was now capable of operating a fully integrated system. As it had

only one Junior and one Senior highschool no problem has ever existed there. Integration within Plaintiff's three elementary schools poses no problem which it could not overcome had it the desire or motivation to do so. The school authorities are apparently waiting for HEW to step in again as to elementary school desegregation.

district and further that no person actively involved in effecting such transfer was acting under color of state law determines that Plaintiff has failed to meet its burden of establishing its case asserted herein. The action is dismissed as to all Defendants.